UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY RODRIGUEZ, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>SUKUT CONSTRUCTION, INC. d/b/a Sukut, a JV, a California corporation; DRAGADOS USA INC d/b/a/ Dragados, a Delaware corporation; FLATIRON CONSTRUCTION CORPORATION d/b/a/ Flatiron, a Delaware Construction Corporation and Does 1-50 inclusive,<br><br>Defendants. | Case No. 1:22-cv-01181-CDB<br><br>**ORDER DEYING PLAINTIFF'S MOTION TO REMAND**<br><br>(ECF No. 8) |

Before the Court is Plaintiffs' Motion to Remand, filed on October 14, 2022. (ECF No. 8, "Motion"). Defendant Flatiron Construction Corporation (Flatiron) filed an Opposition on October 28, 2022 (ECF No. 15, "Opposition"), to which Plaintiff filed a Reply on November 7, 2022. (ECF No. 16, "Reply"). The Court held a motion earing on December 8, 2022, at which Michael Calvo appeared for Plaintiff, Andrew Russell appeared for Defendant Flatiron, Barbara Cotter appeared for Defendant Dragados, and Mia Lomedico appeared for Defendant Sukut Construction. Upon review of the relevant filings and hearing argument from the parties, the Court DENIES Plaintiff's motion for remand for the reasons stated below.

///

# BACKGROUND

This is a labor and employment action in which Plaintiff Jimmy Rodriguez alleges that his former employers – the three named Defendant construction/contracting companies – failed to remit to him numerous types of compensation and other benefits that he was entitled to receive during the approximate two-year period he worked for Defendants (between May 2019 and June 2021). Specifically, Plaintiff alleges that Defendants failed to: (1) pay overtime wages; (2) provide meal periods; (3) authorize and permit rest periods; (4) pay all wages owed timely upon Plaintiff's separation from employment; (5) provide accurate itemized wage statements; (6) pay reporting time pay; (7) indemnify necessary business expenses; and (8) accurately record and pay sick leave. Plaintiff also alleges Defendants committed unfair business practices.

On June 27, 2022, Plaintiff filed a class action complaint on behalf of himself and all others similarly situated against Defendants in the Superior Court of California, in Kern County on June 27, 2022. In the complaint, Plaintiff seeks to recover, among other things, unpaid wages, liquidated damages, premium pay, statutory penalties, restitution, attorneys' fees, interest, and costs.

On September 16, 2022, Defendant Flatiron timely filed a Notice of Removal. (ECF No. 1).[1] In the Notice, Flatiron asserted that removal from state court was appropriate on two separate and independent grounds. First, that this court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. §§ 1332(d)(3), 1441, and 1446. Second, that there is federal question jurisdiction under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"). 29 U.S.C. § 152(2), 28 U.S.C. §§ 1331, 1441, and 1446. (*Id.* at 2). Attached to Flatiron's Notice of Removal is a "Declaration of Shawn Golden" which contains a copy of the Plaintiffs' Collective Bargaining Agreement (CBA). (*Id.*, Exhibit A).

///

---

[1] Attachments to the Notice of Removal reflect that all three Defendants were served with the complaint filed in Superior Court, Kern County, and that Flatiron and Sukut answered in that court. Dragados answered the complaint after it was removed to federal district court. (ECF No. 5). Dragados joined Flatiron's notice of removal (ECF No. 4). Counsel for Sukut expressed during the hearing on December 8, 2022, that Sukut joins in Flatiron and Dragados's opposition to remand.

## **PARTIES POSITIONS AND CONTENTIONS**

In his motion, Plaintiff argues that Defendants "improper[ly] and erroneous[ly]" removed this action and that remand to state court is required. (Motion 7).[2] First, as to CAFA-conferred jurisdiction under 28 U.S.C. § 1332(d)(2), Plaintiff argues that Defendants fail to satisfy the $5 million dollar amount in controversy threshold. Plaintiff complains that the calculations set forth in Defendants' Notice of Removal are speculative, conclusory, and not sufficiently supported with evidence such that Defendants fail to carry their burden of proving amount in controversy by a preponderance of evidence. Second, as to federal question jurisdiction under 28 U.S.C. § 1331, Plaintiff argues that Defendants are incorrect in asserting that Plaintiff's claims are preempted by the LMRA. Instead, Plaintiff asserts, the claims arise independently under California state law and in all events do not require the Court to interpret or refer to the collective bargaining agreement. (*Id.* 8)

Defendants' opposition maintains that removal is appropriate under both CAFA and federal question jurisdiction. In support of satisfying the amount in controversy threshold, Defendants proffer the declaration of Christine Denio, a Payroll and Accounts Payable Shared Services Director for Flatiron. Ms. Denio attests to having reviewed Defendant's business information and records relevant to the time associated with Plaintiff's claims. After identifying relevant employee populations, Ms. Denio analyzed data implicated by Plaintiffs' claims, including number of wage statements issued, number of separated employees, average work hours and average hourly pay rates.

Ms. Denio used an average effective hourly rate of $50.53 per hour and aggregated the weekly wage hours to 11,265 wage statements for 332 employees in the 1-year period relevant to Plaintiff's claims; 598 employees who worked an aggregate total of 130,680 workdays which counts the total number of days for which each employee recorded actual hours worked in the relevant 3-year period; and 637 who worked for 142,433 workdays for the relevant 4-year period. Defendants' Opposition used even more conservative estimates to aggregate damages as further

---

[2] Citations in this Order to the Motion, Opposition and Reply refer to the ECF Header-assigned page numbers, not the page numbers noted in the footer of the filings.

discussed below.  Based on Ms. Denio's calculations, other information and certain assumptions discussed herein, Defendants conclude that the damages and other relief Plaintiff seeks exceeds $5 million dollars.

Defendants also argue that the Court maintains original jurisdiction of the action because Plaintiff's principal claims are preempted under Section 301 of the LMRA and any remaining non-preempted claims are derivative of the preempted claims (and, thus, properly removed).

In his Reply, Plaintiff forcefully maintains that Defendants "inappropriate[ly] and improper[ly]" raised and relied in their opposition papers on new amounts in controversy that were not advanced in the Notice of Removal, including attorney's fees and additional calculations for meal period and wage statement violations, and asks the Court to disregard such calculations. (Reply 4, 12-13, 15-16)[3]  Plaintiff also raised various challenges to Defendants' amount in controversy calculations, which are addressed below.

Responding to Defendants' preemption arguments, Plaintiff argues that despite the existence of the collective bargaining agreement, all his claims arise under state law and are independent of the CBA.  To the extent exemptions under the California Labor Code may apply to Plaintiff's claims because of the CBA, Plaintiff points out that a Court's mere need to review or analyze a CBA to resolve a claim does not amount to *per se* federal preemption; instead, preemption applies only where a Court is called upon to "interpret" the CBA.

## **STANDARD OF LAW**

A suit brought in state court may be removed to federal court if the court would have original jurisdiction over the suit. 28 U.S.C § 1441(a); *see also Libhart v. Santa Monica Dairy Co.*, 592 F.3d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from statutory authorization of Congress.").

---

[3] At the hearing on December 8, 2022, when asked by the Court, Plaintiff's counsel could not offer authority for the proposition that the Court should disregard Defendants' later-provided removal arguments and calculations.  In fact, a district court may consider such evidence as amending a defendant's notice of removal. *E.g., Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 & n.1 (9th Cir. 2002) ("The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal."); *Taylor v. United Road Services, Inc.*, 313 F. Supp.3d 1161, 1174 n.5 (E.D. Cal. 2018) ("Under Ninth Circuit law, it is permissible for a party to supplement the allegations in a notice of removal by submitting evidence in opposition to a motion to remand.") (citation and quotation omitted).

4

In their notice of removal, Defendants assert the Court has original jurisdiction under two federal statutes. First, they argue jurisdiction exists under CAFA because it is a class action with minimal diversity, a putative class membership of more than 100 members, and an amount in controversy of greater than $5,000,000. (ECF No. 1 ¶¶ 12-37.)  Plaintiff only disputes the amount in controversy calculation. (Motion 11-14.)  Second, Defendants argue jurisdiction attaches under the LMRA because the federal statute preempts Plaintiff's state law claims. (*Id*. ¶¶ 40-57.)

## I.      **Original Jurisdiction Under CAFA**

Under CAFA, federal courts have original jurisdiction over certain class actions if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).  Contrary to Plaintiff's argument (Motion 10, *citing Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992)), under CAFA, there is "no presumption against removal jurisdiction," and, in fact, "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Garza v. Winco Holding, Inc.*, No. 1:20-cv-01354-JLT-HBK, 2022 WL 902782, at *4 (E.D. Cal. Mar 28, 2022) (quoting *Allen v. Boeing Co.,* 784 F.3d, 625, 633 (9th Cir. 2015)).

A defendant seeking removal under CAFA must file in the district court of removal a notice that contains "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and evidentiary submissions are not required. *Dart*, 574 U.S. at 89.

However, once plaintiff contests defendant's assertion of the amount in controversy, the Court must consider the parties' submissions and decide whether the amount in controversy requirement has been satisfied. *Id.* at 88 (citing 28 U.S.C. § 1446(c)(2)(B)).  The parties may submit evidence outside of the complaint, including affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

5

In determining the amount in controversy, if damages are unstated in the complaint, or are understated in the defendant's view, then "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citations omitted). The defendant does not need to make plaintiff's case or prove the amount of controversy beyond a legal certainty. *Harris v. KM Industrial Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). Nor does the preponderance requirement require a district court to perform detailed mathematical calculations of the amount in controversy before determining whether defendant satisfied its burden. *Id.* "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

**II.      Original Jurisdiction Under Preemption and Federal Question Doctrines**

Separately, original jurisdiction over a state law claim "'will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Negrete v. City of Oakland*, 46 F.4th 811, 817 (9th Cir. 2022) (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

In the context of state law-based wage and compensation claims implicating the LMRA (*i.e.*, where a CBA exists), preemption applies unless (1) the challenged rights are conferred by state law independent of a CBA, and (2) the claim can be resolved without interpreting the relevant CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1058 (9th Cir. 2007). "This is true even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it." *Id.* at 1059. *See Curtis v. Irwin Indus.*, 913 F.3d 1146, 1154 (9th Cir. 2019) ("If [the employee]'s CBAs in this case meet the requirements of [Cal. Labor Code] section 514, [his] right to overtime exists solely as a result of the CBA, and therefore is preempted under § 301.") (quotation omitted). Even if "the right exists independently of the CBA, [a court] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Burnside*, 491 F.3d at 1059 (quoting Caterpillar Inc. v.

6

Williams, 482 U.S. 386, 393 (1987).

## DISCUSSION

### I. The Court has Original Jurisdiction Under CAFA

As set forth below, conservative calculations of the damages and other relief Plaintiff seeks in just four of his causes of action exceed CAFA's $5 million dollar amount in controversy threshold.

### A. Rest Periods

Plaintiff claims Defendants violated Cal. Labor Code § 226.7, which prohibits an employer from requiring any employee to work during any rest period mandated by an appliable order of California's Industrial Welfare Commission (IWC). Plaintiff alleges that "Defendants failed and refused to authorize and permit Plaintiff and Class Members, to take ten (10) minute rest periods for every four (4) hours worked, or major fraction thereof."

Defendants point to Plaintiff's allegation that he "was never given a single ten-minute break during his employment with Defendants" (Complaint ¶ 55) and base their rest period amount in controversy calculation on the assumption that *no* putative class member ever received a ten-minute rest period. (Motion 20). Defendants then calculate a total amount in controversy for § 226.7 damages as $4,778,627.15 based on an estimate of total workdays at issue (142,433 days) multiplied by an average hourly wage of $33.55 (which Defendants note is less than the premium rate a claimant would receive for a § 226.7 violation, *see* Opposition 20).[4]

The Court declines to include in its calculation of total amount in controversy Defendants' full estimate of potential § 226.7 liability. Although Plaintiff alleges in the complaint's "Factual Allegations" that Defendants "systematically" prevented employees from receiving their required rest breaks (Complaint ¶ 54), in the allegations associated with the rest break claim, Plaintiff alleges that class members were "not provided all their rest periods due to shift scheduling and/or

---

[4] Although Plaintiff adamantly maintains that the $33.55 hourly wage used by Defendants in its amount in controversy calculations is speculative and inflated (Motion 13; Reply 6,12), the Court notes that the minimum wage provided for in the CBA is for a warehouseman ($31.59). During the hearing on December 8, 2022, Plaintiff's counsel offered no reason why using this minimum wage would be improper. Even with this slightly reduced hourly rate, Defendants easily satisfy the $5 million dollar amount in controversy threshold.

7

work related demands placed upon them by Defendants …." (*Id.* at ¶ 97).  The Court concludes the relevant allegations do not assert that each and every putative class member was deprived of each and every rest break to which he was entitled.

Nevertheless, the Court concludes based on Plaintiff's allegations that the rest break violations he allegedly suffered were sufficiently widespread and frequently suffered by other putative class members, that a conservative estimate is appropriate. *See, e.g., Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, at *7 (N.D. Cal. June 14, 2013) (finding that allegations of policy's "pervasiveness" were sufficient to support 100 percent violation rate); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5-6 (N.D. Cal. Mar. 1, 2012) (assumption of one violation per week was reasonable when complaint alleged "uniform policy and scheme" during class period).[5]  Assuming here that every class member suffered at least one rest break violation per five-day workweek (*e.g.*, 20% of Defendants' amount in controversy calculation), the estimated § 226.7 liability for amount in controversy purposes is $955,725.43.

### B.    Meal Periods

Plaintiff alleges that "Defendants failed to provide Plaintiff and Class members, timely and uninterrupted meal periods of not less than thirty . . . minutes pursuant to the IWC wage orders," in violation of Labor Code §§226.7 and 512 as well as the applicable IWC wage orders. (Complaint ¶ 90).  Plaintiff seeks statutory damages in the amount of one hour of premium pay for each day Defendants deprived him and other class members of a mandatory meal period.  (*Id.* Prayer for Relief).

"When a complaint alleges violations in broad, vague terms, the removing defendant must make some estimate of how frequently violations occurred." *Herrera v. Carmax Auto Superstore*, 2014 WL 12586254, at *4 (C.D. Cal. June 12, 2014).  Based on Plaintiff's allegations, Defendants estimate meal period damages at a 20% rate (*e.g.*, Plaintiff and class members were deprived of at least one meal period during a five-day workweek), amounting to $955,725.43. *See Avila*, 432 F. Supp.3d at 1189; *Jasso*, 2012 WL 699465, at *5-6.  Plaintiff does not credibly

---

[5] *Accord, Avila v. Rue21, Inc.*, 432 F. Supp.3d 1175, 1189 (E.D. Cal. 2020) (finding that a 25% to 60% violation rate "can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation.").

8

1  challenge this calculation and the Court finds the calculation reasonable and supported by a
2  preponderance of the evidence.

### C.     Waiting Time Penalties

Plaintiff seeks damages for alleged waiting time penalties under Cal. Labor Code § 203. (Complaint ¶ 103). Plaintiff's claim for penalties is based on his allegation that Defendants "willfully failed and refused, and continue to willfully fail and refuse, to pay Plaintiff and Class Members their wages, earned and unpaid, either at the time of discharge, or within seventy-two (72) hours of their voluntarily leaving Defendants' employ. These wages include regular and overtime."

Based on Plaintiff's broad allegations, Defendants presumed that each putative class member (PCM) during the relevant period incurred some amount of unpaid or underpaid time at least once, and that under § 203, a single such incident commonly triggers entitlement to penalties for the entire 30-day post-employment period. (Opposition 18) (citing *inter alia Nunes v. Home Depot U.S.A., Inc.*, No 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sep 12, 2019) (upholding similar assumption)).

Plaintiff counters that courts under "well settled" Ninth Circuit authority reject the basis for which Defendants here apply the maximum, 30-day waiting time penalty. (Reply 14-15). For this proposition, Plaintiff relies on a single, unpublished Ninth Circuit case (*Garibay v. Archstone Communities LLC*, 539 Fed. Appx.763 (9th Cir. 2013)). However, numerous courts have characterized the nonprecedential *Garibay* opinion as having little utility, and instead permit defendants to assume violation rates that are supported directly by, or reasonably inferred from, the allegations of the complaint. *See Sanchez v. Abbot Laboratories*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, *3 (E.D. Cal. June 30, 2021) (collecting cases).

Given Plaintiff's characterization of the pervasive nature of Defendants' alleged Labor Code violations, it is reasonable to conclude that Defendants allegedly failed to pay amounts owed to every putative class member such that Defendants may include in the amount in controversy calculation the full 30-day waiting time penalty. *E.g.*, *Salonga v. Aegis Senior Communities, LLC*, 2022 WL 1439914, *4-6 (N.D. Cal. May 6, 2022) ("Concerning the 100-

percent violation rate, courts in this district and others within the Ninth Circuit have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees") (citing cases).

Defendants calculated a total amount in controversy of $3,816,648 in waiting time losses based on a conservatively estimated average hourly wage rate across the total employee population (discussed above, Section I(A)). Plaintiff does not credibly challenge this calculation and the Court finds the calculation reasonable and supported by a preponderance of the evidence.

### D.      Wage Statement Penalties

Plaintiff seeks penalties under Cal. Labor Code § 226(a) based on allegations that Defendants' wage statements did not accurately record the meal and rest period premiums and wages owed per pay period. Plaintiff and Defendants agree that a violation may trigger a maximum penalty of up to $4,000 per employee (*cf.* Complaint ¶ 112, *with* Opposition 13) but disagree as to the per-violation statutory penalty (*cf.* ECF No. 1, Complaint ¶ 112 [$250/$,1000], with Opposition 13 [$50/$100]). Because Defendants use a lesser amount which results in a more favorable outcome for Plaintiff, the Court considers Defendants' calculation below.

Defendants estimate that each PCM whom Plaintiff seeks to represent received at least one inaccurate wage statement per week. (Opposition 19) (*citing Nunes*, 2019 WL 4316903, at *3 (E.D. Cal. Sep 12, 2019) (upholding similar assumption)). Based on the applicable statute of limitations, Defendants calculated the amount in controversy for § 226(a) penalties to be $1,109,900, which is the product of $3,343 per PCM[6] times 332 PCMs.

Defendants' calculation of amount in controversy for § 226(a) penalties is based on certain assumptions the Court finds reasonable. For instance, despite allegedly being entitled to two daily rest breaks per eight-hour workday, Plaintiff alleges that he never received a single rest break during his two-year employment (Complaint ¶ 55). Plaintiff alleges other systematic violations committed by Defendants, including failure to provide for required meal breaks, all of which implicate wages and all of which would cause injury to each PCM Plaintiff seeks to

---

[6] The $3,343.07 per PCM figure is explained through the following calculation: [(332 PCMs x $50 initial violation) + (10,933 subsequent wage statements (11,265-332) x $100 subsequent violation)].

10

represent "since they could not determine from the wage statements the correct wages to which they were entitled." *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal.5th 93, 120 (2022) (failure to include in pay statements credited hour of work and premium pay to be awarded "deprives the employee of information needed to evaluate whether the payment is correct, and in so doing results in injury under the terms of" § 226).

Plaintiff does not credibly challenge this calculation and the Court finds the calculation reasonable and supported by a preponderance of the evidence. *See Naranjo*, 13 Cal.5th at 121 (holding "failure to report premium pay for missed breaks can support monetary liability under section 226 for failure to supply an accurate itemized statement reflecting an employee's gross wages earned, net wages earned, and credited hours worked.").

*       *       *       *       *

Based only on amounts in controversy relating to allegedly withheld rest breaks and meal periods, along with waiting time and wage statements penalties, a preponderance of the evidence demonstrates Plaintiff's complaint conservatively puts far more than $5 million dollars at issue. As such, the Court declines to address other amounts that potentially could increase the amount in controversy (*i.e.*, attorney's fees).

**II.    Plaintiffs' Claims are Preempted by the LMRA**

Section 301 of the LMRA states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C § 185(a). Once preempted, "any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

**A.    Plaintiff's Overtime Claim is Preempted**

Cal. Labor Code § 514's exemption clause provides:

Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides

11

> premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

If the CBA at issue meets the requirements set forth in § 514, then Plaintiff's overtime compensation claim is preempted by Section 301 of the LMRA as it exists "solely as a result of the CBA." *Curtis*, 913 F.3d at 1154.  The Court agrees with Defendants that the CBA provides for wages, hours of work, working conditions, as well as premium wages to be paid, and an hourly rate above the statutory threshold. (*See* ECF No. 1, Exhibit A at pp. 10-17, 20-22, 25-36.) Accordingly, Plaintiff's overtime claim is preempted, and the Court has federal question jurisdiction over this cause of action.

### B.   Plaintiff's Meal Break Claim is Preempted

Cal. Labor Code §512(e) provides that the state statute governing an employer's requirement to provide meal breaks is inapplicable where the employee is covered by a valid collective bargaining agreement that provides for wages, hours of work, working conditions, and meal periods, and compels arbitration of disputes relating to meal period provisions.

If the CBA at issue meets the requirements set forth in § 514, then Plaintiff's overtime compensation claim is preempted by Section 301 of the LMRA as it exists "solely as a result of the CBA." *E.g., Blackwell v. Commercial Refrigeration Specialists, Inc.*, No. 2:20-cv-01968-KJM-CKD, No. 2:20-cv-02281-KJM-CKD, 2021 WL 2634501, at *5 ("The CBA here meets [the requirements of Labor Code § 512(e)] … [and as] a result, plaintiff's meal period claim exists only because of his CBA and is thus preempted."). Accordingly, Plaintiff's meal break claim is preempted, and the Court has federal question jurisdiction over this cause of action.

### C.   Supplemental Jurisdiction over Non-Preempted Claims.

Pursuant to 29 U.S.C. § 1367(a), supplemental jurisdiction is appropriate when state and federal claims "derive from a common nucleus of operative facts." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).  *See also, Van Bebber v. Dignity Health*, 1:19-cv-00264-DAD-EPG, 2019 WL 4127204, at *9 (E.D. Cal. Aug. 30, 2019) (exercising supplemental jurisdiction over a plaintiff's remaining causes of action because they arose out of the same employment relationship as their overtime claim).

Because Plaintiff's remaining claims largely are derivate from the preempted overtime and meal break claims, the Court shall exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) to avoid needless expense of judicial resources and the potential for inconsistent judgments due to parallel proceedings.  *E.g., Estrada v. Kaiser Foundation Hospitals,* 678 Fed. Appx. 494, 497 (9th Cir. 2017) (finding that when a claim derives from a LMRA-preempted claim, the derivative claim also fails); *Jimenez v. Young's Market Company, LLC,* 2021 WL 5999082 at *13 (N.D. Cal. Dec. 20, 2021) (finding that claims for failure to pay final wages and provide accurate wage statements were preempted because they were derivative of substantive claims for owed overtime and meal break violations).

## **CONCLUSION AND ORDER**

For the reasons set forth above, Plaintiffs' motion for remand is DENIED.

IT IS SO ORDERED.

Dated:   **December 9, 2022**                              _____
                                              UNITED STATES MAGISTRATE JUDGE